JS-6

COAST LAW GROUP, LLP
MARCO A. GONZALEZ (SBN 190832)
marco@coastlaw.com
LIVIA BORAK BEAUDIN (SBN 259434)
livia@coastlaw.com
NATALIE CLAGETT (SBN 351072)
natalie@coastlaw.com
1140 S. Coast Highway 101
Encinitas, California 92024
Ph: (760) 942-8505
Fax: (760) 942-8515

LOS ANGELES WATERKEEPER
ERINA KWON (SBN 235079)
erina@lawaterkeeper.org
BENJAMIN AVI HARRIS (SBN 313193)
ben@lawaterkeeper.org
360 E. 2nd Street, Suite 250
Los Angeles, California 90012
Ph: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES WATERKEEPER, a
California non-profit association,

      Plaintiff,

    v.

SIKA CORPORATION, a New Jersey
corporation;

      Defendant.

Case No.: 2−cv−10833−CAS−MAAx

**CONSENT DECREE**

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant Sika Corporation ("Defendant") owns and operates a facility at 12767 Imperial Highway, Santa Fe Springs, California 90670, under Waste Discharger Identification number 4 19I001199;

**WHEREAS**, the Facility's industrial activities consist of manufacturing concrete admixtures, cementitious and acrylic color mixing, and warehousing and distribution of construction related products;

**WHEREAS**, the Facility is categorized under Standard Industrial Classification ("SIC") Code 2899-07, covering Concrete Additives (Manufacturing);

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

1

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on October 7, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on December 16, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-10833-CAS-MAA ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains

1   and surface waters, including North Fork of Coyote Creek, Coyote Creek, San
2   Gabriel River Reach 1, San Gabriel River Estuary, Alamitos Bay, San Pedro Bay
3   Near and Off Shore Zones, and the Pacific Ocean (collectively, "Receiving Waters");

4       **WHEREAS**, on January 10, 2025, Plaintiff, along with its attorneys and
5   technical consultant, with the cooperation of Defendant, conducted an inspection of
6   the Facility, including all BMPs implemented by Defendant to manage and mitigate
7   the discharge of pollutants in storm water at the Facility;

8       **WHEREAS,** Defendant denies all allegations in the 60 Day Notice Letter and
9   Complaint;

10      **WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or
11  "Parties"), without any adjudication of Plaintiff's claims or any admission of any
12  violations by Defendant, agree that it is in their mutual interest to enter into a Consent
13  Decree setting forth terms and conditions appropriate to resolving the allegations set
14  forth in the 60-Day Notice Letter and Complaint without further proceedings;

15      **WHEREAS**, since the filing of the Complaint, Defendant proposed installing
16  the BMPs set forth herein and Defendant anticipates spending at least an additional
17  $400,000 to install such BMPs, improve stormwater management at the Facility and
18  implement this Consent Decree;

19      **WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree
20  shall be made in compliance with all applicable federal, state and local laws, rules
21  and regulations.

22      **NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE**
23  **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**
24  **FOLLOWS:**

25      1.      The Court has jurisdiction over the subject matter of this action pursuant
26  to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

27      2.      Venue is appropriate in the Central District Court pursuant to Section
28  505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the

alleged violations are taking place is located within this District.

     3.    The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

     4.    LA Waterkeeper has standing to bring this action.

     5.    The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt

## I.    OBJECTIVES

     6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

     7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

     8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by

certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, copies of which in each case shall be provided to Defendant, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

        a.    "BAT" means the Best Available Technology Economically Achievable.

        b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

        c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

        d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

g.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.    "Facility" means that portion of the property located at 12767 Imperial Highway, Santa Fe Springs, California 90670 that is currently covered under the applicable Notice of Intent for the Industrial General Permit as described in the Defendant's SWPPP.

j.    "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for Whittier Hills (WTHC1), CA, USA"[2].

k.    "MIP" means a Monitoring Implementation Plan.

l.    "PPT" means Pollution Prevention Team.

m.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.9138&lon=-118.0701.

[PROPOSED] CONSENT DECREE

o.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.    "SWPPP" means a Storm Water Pollution Prevention Plan.

r.    "Term" means the period between the Effective Date and the "Termination Date."

s.    "Termination Date" means the latest of:

i.    June 30 following three (3) years from the Effective Date;

ii.    seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following three (3) years after the Effective Date; or

iii.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

iv.    Notwithstanding the foregoing, if the sampling results for samples taken at the Facility as required by this Consent Decree during four (4) consecutive QSEs demonstrate no "Exceedances" (as defined in Paragraph 22 below) of any parameter at any Discharge Point, and provided that all accrued monetary obligations in this Consent Decree have been met and that there are no ongoing, unresolved proceedings or processes to enforce the Consent Decree, then the Termination Date of this Consent Decree shall be thirty (30) days from the date Defendant provides written notification to LA Waterkeeper of its right to terminate

7

1      pursuant to this Paragraph.

2          t.      "Wet Season" means the period beginning October 1st of any

3                  given calendar year and ending May 31st of the following calendar

4                  year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree unless identified and eliminated as required under the General Permit.

13.    <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with: (1) BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14.    <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15.    <u>Structural and Non-Structural BMPs for the Facility</u>. Consistent with the time frames set out below, unless otherwise noted, Defendant shall develop and

implement the following BMPs at the Facility:

    a.    Within ninety (90) days of the Effective Date, patch, pave, or otherwise resurface the three areas of degraded pavement or asphalt identified in Exhibit A attached hereto (other areas of paved surfaces to be inspected and patched, paved, or resurfaced as appropriate consistent with the Facility's operations and maintenance activities);

    b.    Within one hundred and eighty (180) days of the Effective Date, remove all twelve unused and/or inutile portable silos from the entire property;

    c.    As of the Effective Date, implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas at least twice per month.

    d.    As of the Effective Date, employ hand sweeping and/or vacuuming, such as with a backpack style vacuum and/or manual sweeping, in areas a mechanical sweeper cannot access at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event.

    e.    As of the Effective Date, employ Biochar and Filtrexx socks at Outfalls 2 and 4. Configure such Biochar and Filtrexx socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendant shall, thereafter, employ and secure new Biochar and Filtrexx socks in the same manner annually prior to the start of the Wet Season, no later than September 15th unless another media or

1  other filtration BMPs are deemed more effective;

2  f.   During each Wet Season, as necessary, replace the filter socks
3       when degraded or ineffective, including without limitation when
4       there are rips, tears or other visual damage, and/or sampling data
5       demonstrating the Biochar and Filtrexx socks are not sufficiently
6       reducing pollutant concentrations;

7  g.   Within twenty-four (24) hours prior to a Forecasted Rain Event,
8       inspect all wattles/filters/socks deployed at the Facility;

9  h.   Within twenty-four (24) hours prior to a Forecasted Rain Event,
10      remove any exposed waste material and, to the extent reasonably
11      feasible and appropriate, cover industrial materials, debris and
12      scrap bins, and trash cans stored outside and where roof protection
13      is inadequate with tarps, lids, or other coverings sufficient to
14      prevent exposure to rainfall;

15  i.   By July 31, 2025, retain an outside engineering firm to
16      commence an internal evaluation, including through bench scale
17      testing as appropriate, of additional BMPs that may be
18      implemented at the Facility to enhance the effective management
19      of storm water at the Facility.  Such evaluation shall be completed
20      by January 31, 2026, unless there has not been sufficient runoff to
21      timely perform bench scale testing, in which case such evaluation
22      shall be completed by April 30, 2026.  Defendant shall make best
23      efforts to collect storm water runoff for testing during the next
24      storm event which produces runoff during operating hours.  Any
25      additional BMPs proposed for implementation at the Facility as a
26      result of this evaluation shall be submitted for review and
27      comment to LA Waterkeeper, with Defendant utilizing its
28      reasonable efforts to incorporate any comments from LA

10

Waterkeeper into the final design of such BMPs.  Such additional BMPs shall be implemented by the beginning of the 2026 Wet Season.

    j.    Within thirty (30) days of the Effective Date, institute an equipment and vehicle maintenance program that ensures:

        i.  no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

        ii.  maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

        iii.  when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground; and

    k.    Within ten (10) days of the BMPs identified in Paragraphs 15.a and15.b being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

**B.**    **Sampling at the Facility**

16.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from four (4) Qualifying Storm Events per Reporting Year in accordance with the General Permit § XI.B.2; twice during the first half of the Reporting Year (July through December) and twice during the second half of the Reporting Year (January through June). Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. If Defendant would have been required to collect samples during a rain event pursuant

to this Consent Decree had such rain event produced a discharge, but Defendant did not collect samples because such rain event did not produce a discharge, then Defendant shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred. Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within ten (10) days of a written request for such records by LA Waterkeeper.

17.    Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason to comply with its obligations under the General Permit, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

18.    Laboratory and Holding Time. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

19.    Detection Limit. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

20.    Reporting. Defendant shall provide complete laboratory results of all

samples collected at the Facility to SMARTS in accordance with the General Permit
and shall provide copies to LA Waterkeeper within ten (10) business days of
receiving the laboratory report with the results or notify LA Waterkeeper when the
results have been submitted to SMARTS.

    **C.**    **REDUCTION OF POLLUTANTS IN DISCHARGES**

    21.   <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs
for storm water discharges from the Facility that reduce pollutant concentrations to
levels below those in Table 1 in accordance with the requirements of the General
Permit.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| pH | < 6 or > 9 s.u. | NAL |
| Oil & Grease | 15 mg/L (annual); 25 mg/L (instantaneous) | NAL |
| Total Suspended Solids | 100 mg/L (annual); 400 mg/L (instantaneous) | NAL |
| Iron | 1 mg/L (annual) | NAL |
| Aluminum | 0.75 mg/L (annual) | NAL |

    22.   <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows:
For "annual" limits, an Exceedance occurs where the concentration of any pollutant
in any two (2) storm water samples from the Facility in a given Reporting Year
exceeds the applicable annual numeric limit contained in Table 1.  For

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit
applicable to each parameter shall be the then-effective limit provided by the
applicable source, e.g., if the NAL for zinc is either increased to 0.30 mg/L or
decreased to 0.20 mg/L, the new NAL (not 0.26 mg/L) shall be used as the Table 1
limit for the purposes of this Consent Decree as if set forth herein. If the source of a
limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the
NAL for iron being removed, then the Parties shall meet and confer regarding the
applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

1  "instantaneous" limits, an Exceedance occurs where the concentration of any

2  pollutant in any storm water sample from the Facility exceeds the applicable numeric

3  limit contained in Table 1 during a Reporting Year. An Exceedance shall constitute a

4  violation of this Consent Decree.

5       23.    Action Plan. Upon implementation of the BMP(s) identified pursuant to

6  Paragraph 15.i. (no later than the beginning of the 2026 Wet Season), and for the

7  remainder of the Term, if (a) Defendant has an unauthorized non-storm water

8  discharge in violation of Paragraph 12, or  (b) the results of storm water samples

9  establishes a new Exceedance as defined above(each a "Trigger Event"), Defendant

10  shall prepare and submit to LA Waterkeeper a plan to address the conditions causing

11  a Trigger Event.  ("Action Plan"). The complete Action Plan shall be submitted to LA

12  Waterkeeper within thirty (30) days of Defendant's initial receipt of the laboratory

13  report documenting the applicable  Trigger Event.

14              a.    Action Plan Requirements. Each complete Action Plan submitted

15                    shall include at a minimum: (1) the identification of the

16                    pollutant(s) discharged in excess of the numeric limit(s) and/or the

17                    applicable unauthorized non-storm water discharge; (2) an

18                    assessment of the source of each pollutant exceedance and/or

19                    applicable unauthorized non-storm water discharge; (3) an

20                    assessment of the effectiveness of existing BMPs to address the

21                    Exceedance and/or the identification of additional BMPs that shall

22                    be implemented to achieve compliance with the numeric limit(s)

23                    and/or unauthorized non-storm water discharge prohibition, as

24                    well as the design plans and calculations of these additional

25                    BMPs; (4) a description of actions to be taken to implement

26                    existing or modified BMPs for the purpose of preventing future

27                    Exceedances; and (5) time schedules for implementation of the

28                    proposed BMPs. The time schedule(s) for implementation shall

ensure that all BMPs are implemented as soon as reasonably practicable, but in no event later than ninety (90) days following the submission of the Action Plan, unless such a timetable is not technically feasible and/or a later implementation date is mutually agreed upon by the Settling Parties. Within ten (10) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

    b.    <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

        i.    <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

        ii.    <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

        iii.    <u>Pavement Improvements</u>. Inspection of the condition of any proximate pavement conditions and assessment of the need for patching, paving, or resurfacing of such surfaces.

        iv.    <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

     v.    Evaluation of Existing BMPs.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs;

     vi.    If necessary, increase the capacity of the berm surrounding the admixture area.

c.    Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and finalize the Action Plan, including accepting such revisions and/or explaining or justifying in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.    Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28.b.i. below.

e.    Action Plan Payments. Defendant shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the

applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

f.    Notwithstanding anything to the contrary set forth above, a new Action Plan shall not be required to address any additional BMPs implemented pursuant to Paragraph 15.i above or recurring Trigger Events for the same pollutant in the same drainage area to the extent such pollutant is being addressed through ongoing or as yet to be fully implemented BMPs in a previously approved Action Plan.

**D.    VISUAL OBSERVATIONS**

24.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours for each QSE until the required number of QSEs is sampled each half of the Reporting Year. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

25.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct monthly visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Consistent with the requirements of the General Permit, such observations shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. Consistent with the requirements of the General Permit, all Discharge Points shall also be inspected as required for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other

17

materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility as required under the General Permit.

26. <u>Visual Observations Records</u>. Defendant shall maintain observation records, including photographs, to document compliance with Paragraphs 24 and 25. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; and (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and representative photographs.  Defendant shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

**E.    TRAINING AND PLANS**

27. <u>Employee Training Program</u>. Within  forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

    a.    <u>Materials</u>. Training materials should include, at minimum, a training slide deck with necessary information (e.g., drawings or

diagrams) to ensure effective implementation of the BMPs and stormwater monitoring at the Facility;

b.    Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.    Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.    Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.    Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.    Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

[PROPOSED] CONSENT DECREE

g.  <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.  <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

28.  <u>SWPPP Revisions</u>.

a.  <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.  A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.  A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

iii.  Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs

1  required by this Consent Decree;

2  iv.  A set of site maps that comply with Section X.E of the

3  General Permit and provisions of this Consent Decree,

4  including accurately depicting the different drainage areas

5  and flows;

6  v.  A MIP as required by Sections XI and X.I of the General

7  Permit;

8  vi.  A designation (by position/title) of employees responsible

9  for carrying out storm water management, monitoring,

10  sampling and SWPPP implementation, e.g., visual

11  inspection of each specific area, monitoring each specific

12  BMP, sampling, etc.; and

13  vii.  A Training Program as described above in Paragraph 27.

14  b.  Additional SWPPP Revisions.

15  i.  Within thirty (30) days after approval of any Action Plan by

16  LA Waterkeeper (or resolution pursuant to Dispute

17  Resolution), Defendant shall revise the then-current SWPPP

18  to reflect the changes required by the Action Plan and

19  submit the complete, updated SWPPP to LA Waterkeeper

20  for LA Waterkeeper's review and comment.

21  ii.  Within thirty (30) days after any changes in industrial

22  activities or sources of industrial pollutants, changes to

23  Discharge Points, or changes to sections of the SWPPP

24  identified in the SWPPP as requiring a SWPPP revision

25  (including but not limited to, changes in Facility contacts or

26  PPT members, changes or additions of BMPs, or changes in

27  or additions of industrial activities that impact storm water

28  discharge), Defendant shall revise the then-current SWPPP

to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    c.   <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to Paragraph 28.a, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and  finalize the revised SWPPP, including accepting them and/or explaining or justifying in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**F.**    **COMPLIANCE MONITORING AND REPORTING**

    29.   In the event that Plaintiff is required to prepare an Action Plan, LA Waterkeeper may conduct a site inspection ("Site Inspection") no more frequently than once a year. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least seventy two (72) hours' notice during dry weather and twenty-four (24) hours' notice during wet weather prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided

by electronic mail to the individual(s) designated below at Paragraph 56 and any Site Inspection shall be limited to three individuals from Plaintiff, including a technical consultant. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper unless the required number of samples has already been collected. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection  with the approval and subject to the review of such materials by Defendant in its reasonable discretion. Plaintiff shall not disclose any information or data obtained during or in connection with any Site Inspection to any third party, except for the District Court in furtherance of enforcement of the terms of the Consent Decree.

30.   <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.   Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality and not otherwise uploaded to SMARTS.

b.   Within ten (10) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence, or any

23

1   document related to storm water quality at the Facility received by

2   Defendant from the Regional Board, the State Board, and/or any

3   state or local agency, county, municipality.

4   31.   <u>Compliance Monitoring</u>. Defendant shall partially defray costs

5   associated with Plaintiff's monitoring of Defendant's compliance with this Consent

6   Decree during the Term by paying Fifteen Thousand Dollars ($15,000.00) within

7   thirty (30) days of the Entry Date.  Payments pursuant to this Paragraph shall be made

8   via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return

9   receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street,

10  Suite 250, Los Angeles, CA 90012. Please include the Facility's name and WDID on

11  the payment. Failure to submit payment as required under this Paragraph will

12  constitute breach of the Consent Decree.

13  **G.   ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND**

14  **COSTS, MISSED DEADLINES, AND INTEREST**

15  32.   <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial

16  project activities that will reduce or mitigate the impacts of storm water pollution

17  from industrial activities occurring in the Coyote Creek watershed, Defendant shall

18  make a payment totaling Twenty Thousand Dollars ($20,000.00) to the Rose

19  Foundation made within thirty (30) days of the Entry Date, payable to the Rose

20  Foundation for Communities and the Environment and sent via overnight mail to

21  Rose Foundation, 201 4th Street, Suite 102, Oakland, California 94607. Failure to

22  submit payment as required under this Paragraph will constitute breach of the

23  Consent Decree.

24  33.   <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Fifty

25  Thousand Dollars ($50,000.00) to LA Waterkeeper to partially reimburse Plaintiff for

26  their investigation fees and costs, expert/consultant fees and costs, reasonable

27  attorneys' fees, and other costs incurred as a result of investigating and filing the

28  lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry

Date. The payment shall be made payable to: Coast Law Group, LLP, Attn: Livia Borak Beaudin, and delivered by overnight carrier to 1140 South Coast Highway 101, Encinitas CA 92024. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, California 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

35.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, California 94607.

## IV.    DISPUTE RESOLUTION

36.    Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within fourteen (14) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

37.    Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 36, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

38.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

39.    Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in and related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

40.    Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and

[PROPOSED] CONSENT DECREE

each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

42.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

43.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

44.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

45.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and

paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

46.   <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

47.   <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48.   <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49.   <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

50.   <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

51.   <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

52.   <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

53.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any

deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

54. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

55. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

56. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper | Sika Corporation |
| Erina Kwon | Chrisopher Shanahan |
| Benjamin Harris | Juan Prado |
| Madeleine Siegel | Henry Castaneda |
| 360 E 2nd St., Suite 250 | 12767 Imperial Highway |
| Los Angeles, CA 90012 | Santa Fe Springs, CA 90670 |
| Email: erina@lawaterkeeper.org | Email:shanahan.christopher@us.sika.com |
| Email: ben@lawaterkeeper.org | Email: prado.juan@us.sika.com |
| Email: madeleine@lawaterkeeper.org | Email: castaneda.henry@us.sika.com |
| Phone: 310-394-6162 | |
| | |
| With copies to: | With copies to: |
| Livia Borak Beaudin | John W. Watson |
| Coast Law Group LLP | Baker McKenzie LLP |
| 1140 South Coast Highway 101 | 300 E. Randolph Street, Suite 5000 |
| Encinitas, CA 92024 | Chicago, Illinois 60601, USA |
| Email: livia@coastlaw.com | Phone: 312-861-2646 |
| Email: natalie@coastlaw.com | john.watson@bakermckenzie.com |
| Phone: 760-942-8505 | |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

57.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

1    The Parties hereto enter into this Consent Decree and submit it to the Court for
2    its approval and entry as a final judgment.

3          IN WITNESS WHEREOF, the undersigned have executed this Consent Decree
4    as of the date first set forth below.

5

6

7    APPROVED AS TO CONTENT

8

9

10   Dated: ___June 23___, 2025          By: _____
11                                            Bruce Reznik
12                                            Executive Director
13                                            Los Angeles Waterkeeper

14   Dated: ___June 19___, 2025          By: _____
15                                            Tim Whitehead
16                                            VP, Concrete & Mortars Production
17                                            Sika Corporation

18

19   Dated: ___June 23___, 2025          By: _____
                                             Richard Tucker (Jun 23, 2025 14:29 CDT)
20                                            Richard Tucker
21                                            Executive Vice President-Production
                                             Sika Corporation

22   APPROVED AS TO FORM

23                                       COAST LAW GROUP, LLP

24

25   Dated: ___June 23___, 2025          By: _____
26                                            Livia Borak Beaudin
27                                            Attorney for Plaintiff
                                             Los Angeles Waterkeeper

28

BAKER MCKENZIE LLP

Dated: June 24, 2025

By: _____
John W. Watson
Attorney for Defendant
Sika Corporation

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

    Upon approval and entry of this Consent Decree by the Court, this Consent
Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: __August 20, 2025__

CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE CHRISTINA A. SNYDER
United States District Court Judge